Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
**ORBIT IP, LLP**
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Plaintiff,
DBEST PRODUCTS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| **TAIZHOU LUQIAO SHENGQIAN HOUSEWARES FACTORY,**<br><br>        Plaintiff,<br><br>**v.**<br><br>**DBEST PRODUCTS, INC.,**<br><br>        Defendant. | Case No.: 2:24-cv-10842-MWC-JC<br><br>**DBEST PRODUCTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>JUDGE:  Michelle Williams Court<br><br>COURTROOM: 6A<br><br>DATE: July 25, 2025<br><br>TIME: 1:30 p.m. |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION..............................................................................1

II.    FACTUAL BACKGROUND.............................................................1

III.   LEGAL STANDARD.........................................................................3

IV.    ARGUMENT......................................................................................3

   A.  To Overcome the Presumptions of Patent Validity and Good Faith, Torts Based on Asserting Patent Rights Require Pleading Affirmative Evidence of Bad Faith.............................................................................3

   B.  Seespring's Claims are Preempted by the Patent Act Because it has not Plausibly Alleged that dbest Reported Infringement in Bad Faith..................4

   C.  For the Same Reasons They are Preempted by Federal Patent Law, Seespring's State Law Claims Are Barred by the *Noerr-Pennington* Doctrine.............................................................................................6

   D.  Seespring's tort Claims are Barred by California's Litigation Privilege Because dbest's Infringement Report Meets the Requirements for the Privilege's Protection..................................................................................9

   E.  The SAC Fails to State a Claim for Tortious Interference Because it fails to Plausibly Allege a Wrongful act or Identify a Specific Customer that Probably Would have Purchased a Delisted Product but for dbest's Report...............................................................................10

   F.  The SAC Fails to State a Claim for Unfair Competition Under Bus. & Prof. Code § 17200 Because it has not Plausibly Alleged Conduct that is Unlawful, Unfair, or Fraudulent..................................................................14

V.     CONCLUSION.................................................................................17

DBEST'S MEMO.ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
Case No. 2:24-cv-10842-MWC-JC

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................3

*B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527 (9th Cir. 2022)..............................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................................3

*Beyond Blond Prods., LLC v. Heldman*, No. 2:20-cv-5581, 2021 U.S. Dist. LEXIS 203255 (C.D. Cal. Feb. 8, 2021)..............................................................10

*Bio-Medical Research, Ltd. v. Thane Int'l., Inc.*, 249 Fed. Appx. 539 (9th Cir. 2007)...................................................................................................................... 12

*C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998)..............................3

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (Cal. 1999)............................................................................................................ 14, 15

*Content Extraction LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) ..................................................................................................................................6

*Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376 (1995)................... 11

*Disney Enters. v. VidAngel, Inc.*, No. 2:16-cv-04109-AB, 2017 U.S. Dist. LEXIS 221689 (C.D. Cal. Aug. 10, 2017)...........................................................11

*Dominant Semi. Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254 (Fed. Cir. 2008) ...............................................................................................................................4, 5

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)....................................16

*EM Gen. LLC v. Elec. Commerce, LLC*, No. 8:20-cv-00623-AB-MAA, 2021 U.S. Dist. LEXIS 253173 (C.D. Cal. March 17, 2021)......................................... 12

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951 (Cal. 1997)................... 16

*ERBE Elektromedizen Gmbh v. Canady Tech.*, 629 F.3d 1278 (Fed. Cir. 2010) ...............................................................................................................................7

*Fernandez v. Progressive Mgmt. Sys.*, 2022 U.S. Dist. LEXIS 120329, 2022 WL 2541272 (S.D. Cal. July 7, 2022)................................................................ 14

*First Am. Cinema v. Chicken Soup for the Soul Entm't*, No. 19-9577 PSG
  (GJSx), 2020 U.S. Dist. LEXIS 260192 (C.D. Cal. March 12, 2020)...................14

*Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063 (9th Cir. 2008)............................5

*Fitbit Inc. v. Laguna 2, LLC*, No. 17-CV-00079 EMC, 2018 U.S. Dist. LEXIS
  2402 (N.D. Cal. Jan. 5, 2018)................................................................ 10

*Flatley v. Mauro*, 39 Cal. 4th 299 (2006).........................................................9

*George v. eBay, Inc.*, 71 Cal. App. 5th 620 (2021)..........................................13

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367 (Fed.
  Cir. 2004)..............................................................................5, 6, 7

*Golan v. Pingel Enters., Inc.*, 310 F.3d 1360 (Fed. Cir. 2002)..................................3

*Hasberg v. California Fed. Bank*, 32 Cal. 4th 350 (2004)..........................................9

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir.
  1998).......................................................................................4

*Ingels v. Westwood One Broad Servs., Inc.*, 129 Cal. App. 4th 1050 (2005)............14

*Kaiser Found. Health Plan, Inc., v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir.
  2009).......................................................................................7

*Kashian v. Harriman*, 98 Cal. App. 4th 892 (2002)...........................................9

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)....................................16

*Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302 (Fed. Cir. 2013).....................4

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)...................11

*Manufacturers Life Ins. Co. v. Superior Court* 10 Cal. 4th 257 (1995)...................15

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322 (Fed. Cir. 2012)..........3

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019)...............................4

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998)..........4

*Premiertek v. Marc*, No. 2:22-cv-08590-MEMF-SK, 2023 U.S. Dist. LEXIS
  195399 (C.D. Cal. May 24, 2023)............................................................13

*Professional Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508
  U.S. 49 (1993)..........................................................................4, 7, 8

*Santa Fe Props. v. Source Bioscience*, No. CV 20-10727-JFW (PVCx), 2021 U.S. Dist. LEXIS 245976 (C.D. Cal. Feb. 10, 2021)...............................................11

*Shande v. Zoox, Inc.*, No. 22-cv-05821-BLF, 2024 U.S. Dist. LEXIS 91091 (N.D. Cal. May 21, 2024).................................................................................. 10

*Shenzhen Yangjinmaoyi Co., LTD v. Hangzhou Chic Intelligent Tech. Co., LTD*, No. EDCV 22-1144 JGG (SHKx), 2023 U.S. Dist. LEXIS 133061 (C.D. Cal. Feb. 21, 2023)......................................................................................16

*Silberg v. Anderson*, 50 Cal. 3d 205 (1990)...........................................................9

*Sliding Door Co. v. KLS Doors*, No. EDCV 13-00196 JGB (DTbx), 2013 U.S. Dist. LEXIS 71304 (C.D. Cal. May 1, 2013)...............................................10

*SOS Co. v. E-Collar Techs.*, No. CV 16-09667-AB (AFMx), 2017 U.S. Dist. LEXIS 215124 (C.D. Cal. Oct. 17, 2017)...............................................13

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006)...........................................7

*Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991 (9th Cir. 2008) ...................................................................................................................6, 9

*Thimes Sols. Inc. v. TP Link USA Corp.*, No. 22-56176, 2024 U.S. App. LEXIS 7335 (9th Cir. March 28, 2024).................................................. 11

*TP Link United States Corp. v. Careful Shopper, LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065 (C.D. Cal. March 23, 2020).............. 10

*USS-POSCO Indus. v. Contra Costa County Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800 (9th Cir. 1994)................................................. 8

*Virtue v. Creamery Package Mfg.*, 227 U.S. 8 (1913)..................................1

*Watson Labs. Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp.2d 1099 (C.D. Cal. 2011)..................................................................................................15

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (Ct. App. 1996)................................................................................................ 11

*Youst v. Longo*, 43 Cal. 3d 64 (1987)................................................................ 11

1

<u>S</u>TATUTES

2

35 U.S.C. § 282.................................................................................................3

3

4

<u>R</u>ULES

5

Fed. R of Civ. Pro. 12(b)(6)...........................................................................3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DBEST'S MEMO.ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT
Case No. 2:24-cv-10842-MWC-JC

## I.    INTRODUCTION

"The Supreme Court has held for nearly one hundred years that "patents would be of little value if infringers of them could not be notified of the consequences of infringement. . . Such action considered by itself cannot be said to be illegal." *Virtue v. Creamery Package Mfg.*, 227 U.S. 8, 37-38 (1913). Plaintiff Taizhou Luqiao Shengqian Housewares Factory ("Seespring") asserts tort claims against dbest products, Inc. ("dbest") arising from dbest reporting to Amazon that certain of Seespring's listings infringed its patent. These tort claims lack merit for multiple reasons.

First, because patents are presumed valid and a patentee is presumed to assert its patent rights in good faith, a plaintiff asserting tort claims based on that kind of conduct must allege facts that support bad faith. Seespring has not plausibly alleged bad faith. Second, the claims are barred by the *Noerr-Pennington* doctrine, which immunizes a patentee's assertion of patent rights unless the plaintiff can plead facts to support a narrow exception, which Seespring has not done. Third, dbest's report of infringement to Amazon is protected by California's litigation privilege. And fourth, even aside from those three bars, Seespring's allegations do not state claims for tortious interference or unfair competition. For the first, it has failed to plausibly allege a "wrongful act" or that its business relations were disrupted by dbest's infringement report.  For the second, it has failed to plausibly allege that dbest's conduct was unlawful, unfair, or fraudulent as California courts have applied those terms.

For these and other reasons set forth below, dbest respectfully requests the Court to dismiss the Second Amended Complaint.

## II.    FACTUAL BACKGROUND

Seespring is a Chinese general partnership based in Taizhou, China. (Dkt. 22, ¶ 2). It conducts business through a storefront on Amazon.com under the name

"SeespringDirect." (*Id.*, ¶ 7). It claims that the Amazon marketplace constitutes its primary sales channel into the United States. (*Id.*, ¶ 14).

dbest is a California corporation based in Carson, California, and the assignee of U.S. Patent No. 12,103,576 (the "'576 Patent") (*Id.*, ¶¶ 3, 16, and Ex. 1). In December 2024, Seespring received notifications from Amazon that it had removed fourteen listings for products identified by specified Amazon Standard Identification Numbers ("ASINs") for alleged infringement of the '576 Patent. (*Id.*, ¶¶ 7-8). Seespring contacted dbest to request that it withdraw its complaint to Amazon based on Seespring's non-infringement. (*Id.*, ¶ 9). Seespring also submitted an appeal to Amazon based on its non-infringement analysis, and Amazon reinstated twelve ASINs the next day and the last two about two weeks later. (*Id.*, ¶ 10). In late December, Seespring contacted dbest again to ask dbest to withdraw its complaint to Amazon and to prevent it from filing additional complaints. (*Id.*, ¶ 12). dbest advised Seespring's counsel that it had tried to withdraw its complaint through Amazon's Brand Registry Portal on December 22, 2024, but was unsuccessful, so it contacted its Amazon account representative to request manual reinstatement of Seespring's ASINs. (*Id.*, ¶ 12).

On December 17, 2024, Seespring filed this action against dbest seeking a declaratory judgment that it does not infringe the '576 Patent. (Dkt. 1). On January 23, 2025, dbest provided Seespring an unconditional covenant not to sue for infringement of the '576 Patent by Seespring's shoe boxes sold under the ASINs that had been reported to Amazon for infringement. Dkt. 21, ¶ 13 and Ex. 3. Nevertheless, on January 24, 2025, Seespring filed a First Amended Complaint, adding two new counts for declaratory judgment and two state law tort claims. Dkt. No. 13, ¶¶ 29-37; 44-54). In May, dbest and Seespring stipulated that Seespring could filed a Second Amended Complaint ("SAC") and it was filed on May 10, 2025. Dkt. Nos. 17 and 21. The SAC only includes two state law tort claims. The first is for unfair competition under California's Bus. & Prof. Code § 17200. Dkt.

No. 21, ¶¶ 29-33. The second is for tortious interference with Seespring's economic relationships with Amazon and with Seespring's existing customers. *Id.*, ¶¶ 34-39.

## III.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. *Id.* A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. When "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

## IV.    ARGUMENT

### A.    To Overcome the Presumptions of Patent Validity and Good Faith, Torts Based on Asserting Patent Rights Require Pleading Affirmative Evidence of Bad Faith

An issued patent is presumed valid. 35 U.S.C. § 282. The law also recognizes a presumption that the owner of a duly granted patent asserts it in good faith. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998). "This presumption is overcome only by affirmative evidence of bad faith." *Golan v. Pingel Enters., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002); *see Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1332 n.5 (Fed. Cir. 2012) (affirming dismissal of unfair competition claim where plaintiff made only "bald assertions that [defendant] acted in 'bad faith'")). Communicating with possible infringers concerning patent rights is

1  not improper if the patentee has a good faith belief that its communication is

2  accurate. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir.

3  1998). And federal patent law bars imposing liability for publicizing a patent in the

4  marketplace unless the plaintiff can show that the patent holder acted in bad faith.

5  *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir.

6  1998). In general, courts require a threshold showing of incorrectness or falsity, or

7  disregard for either, to find bad faith. *Mikohn Gaming,* 165 F.3d at 897. Therefore,

8  "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise

9  an element of the tort claim." *Dominant Semi. Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d

10  1254, 1260 (Fed. Cir. 2008).

11      "Bad faith includes separate objective and subjective components." *Id.*

12  "[U]nder the objective prong," the claimant must show that the patentee has

13  "pursu[ed] [] claims so baseless that no reasonable litigant could realistically expect

14  to secure favorable relief." *Id.* at 1261 (quoting *Professional Real Estate Inv'rs, Inc.*

15  *v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993)). And the party seeking to

16  allege bad faith must "prove that the [counterclaim] defendant lacked probable cause

17  ... and ... pressed the action for an improper, malicious purpose." *Professional Real*

18  *Estate,* 508 U.S. at 62. Under the subjective prong, a claimant must show that the

19  lack of objective foundation for its claim was either known to the patentee or so

20  obvious that it should have been known." *Kilopass Tech., Inc. v. Sidense Corp.*, 738

21  F.3d 1302, 1310 (Fed. Cir. 2013).

22    **B.  Seespring's Claims are Preempted by the Patent Act Because it has not**
23       **Plausibly Alleged that dbest Reported Infringement in Bad Faith**

24      "Under the Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI, cl.

25  2, "state laws that conflict with federal law are without effect." *Merck Sharp &*

26  *Dohme Corp. v. Albrecht*, 587 U.S. 299, 314 (2019). Federal Circuit law applies to

27  "whether state-law tort claims are preempted by federal patent law." *Dominant*, 524

28  F.3d at 1260.

Here, dbest's allegedly tortious act—notifying Amazon that certain of Seespring's listings are for products that infringe dbest's '576 Patent—is governed and protected by federal patent law. When a plaintiff brings a state-law tort claim that arises out of a patentholder's good faith communication warning that products infringe its patent, federal patent law preempts state-law tort liability. *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *Dominant Semi.*, 524 F.3d at 1260; *see also Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1068 (9th Cir. 2008) (adopting Federal Circuit's holdings requiring evidence of bad faith).

Seespring's state law tort claims both depend on dbest's complaint to Amazon of patent infringement. For unfair competition, it alleges that dbest "has acted unlawfully and unfairly by submitting baseless claims to Amazon that resulted in the wrongful removal of Plaintiff's Non-Infringing Shoe Boxes from Amazon.com." Dkt. 21, ¶ 31. For tortious interference, it incorporates those allegations by reference and then alleges that dbest "knowingly and intentionally interfered with" its "business relationships and expectancy of sales of its products" via Amazon "causing Amazon to remove the ASINs for the Non-Infringing Shoe Boxes." *Id.*, ¶ 35. Because both Seespring's claims are based on dbest's assertion of its patent rights, they could only avoid preemption if Seespring had plausibly alleged that dbest acted in bad faith.

But Seespring has not plausibly alleged that dbest asserted its patent rights in bad faith or overcome the presumption of good faith. First, the words "bad faith" are nowhere in the SAC, which labels dbest's patent infringement report as "baseless." Dkt. 21, ¶¶ 2; 11; 31. Second, Seespring does not allege sufficient facts to support a reasonable inference satisfying the objective prong for bad faith. Even if "baseless" meant that dbest's report was *objectively* baseless, Seespring failed to plausibly allege it.

<u>Third</u>, Seespring failed to allege any facts or evidence of dbest's *subjective* bad faith. It has not alleged that dbest was subjectively motivated by a malicious desire to impose collateral, anti-competitive injury rather than to enforce its patent rights. It has not even alleged that dbest and Seespring are competitors. It alleges that "to remain competitive in the United States marketplace" it "needs the Non-Infringing Shoe Boxes listed in the United States marketplace." Dkt. 21, ¶ 14. But this only supports an inference that Seespring competes with other Amazon sellers.

Because the phrase "bad faith" is not found in the SAC and Seespring's factual allegations do not plausibly allege bad faith, the state law claims are preempted by the Patent Act and should be dismissed.

## C. For the Same Reasons They are Preempted by Federal Patent Law, Seespring's State Law Claims Are Barred by the *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine, derived from the Petition Clause of the First Amendment, "provides that those who petition any department of the government for redress," including the judicial branch, "are generally immune from . . . liability for their petitioning conduct." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (internal quotation marks omitted); *Globetrotter Software*, 362 F.3d at 1377. And it applies to state law claims as well as federal ones. *Id.* (First Amendment policy reasons that justify the extension of *Noerr-Pennington* immunity in federal cases apply equally to state law claims); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) ("*Noerr-Pennington* doctrine applies to ... state law tortious interference with prospective economic advantage claims."); *Content Extraction LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (applying *Noerr-Pennington* doctrine to tortious interference claims based on patent enforcement litigation). *Noerr-Pennington*'s protection is not limited to active litigation. Both the Supreme Court and the Ninth Circuit have "reject[ed] burdens on the right to petition the courts even where no actual litigation was

pending." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 937 (9th Cir. 2006). In *Sosa*, the Ninth Circuit held that *Noerr-Pennington* immunity extends to "litigation-related activities preliminary to the formal filing of the litigation." 437 F.3d at 937.

*Noerr-Pennington* protects a patentee who informs a plaintiff's customers of patent infringement. Such activities are immunized from liability when they are more than "a mere sham." *Globetrotter Software*, 362 F.3d at 1377. Like pleading bad faith to avoid federal preemption, to invoke the "sham" exception to *Noerr-Pennington*, a party must first allege that the patentee's assertion of its rights is "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." *Professional Real Estate*, 508 U.S. at 56-57. If a court first determines that the challenged litigation is objectively meritless, it may then examine the litigant's *subjective* motivation. *Id.* at 60-61. To prove that an action for patent infringement is a sham and the plaintiff is not entitled to immunity, the action "must be 'both objectively baseless and subjectively motivated by a desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy.'" *ERBE Elektromedizen Gmbh v. Canady Tech.*, 629 F.3d 1278, 1292 (Fed. Cir. 2010). The Ninth Circuit recognizes three situations where the sham exception applies:

> [F]irst, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Kaiser Found. Health Plan, Inc., v. Abbott Labs., Inc.*, 552 F.3d 1033, 1045 (9th Cir. 2009) (quoting *Sosa*, 437 F.3d at 938).

Here, Seespring's state law claims both depend on dbest's complaint to Amazon accusing it of patent infringement.  Seespring has not alleged that dbest's

conduct involves a series of lawsuits, or that dbest made intentional misrepresentations to any court, so the exception is the only one that could possibly apply. But the Ninth Circuit applies a "a strict two-step analysis to assess whether a single action constitutes sham petitioning." *USS-POSCO Indus. v. Contra Costa County Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994). "First, the suit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; second, the baseless lawsuit must conceal an attempt to interfere directly with the business relationships of a competitor." *Id.* at 810 (quoting *Professional Real Estate*, 508 U.S. at 60) "The two parts of the test operate in succession: Only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent." *Id.* at 810.

The SAC fails the Ninth Circuit's strict two-part test for the sham exception. It alleges that dbest baselessly reported infringement to Amazon, not that dbest filed a lawsuit. At step one, as explained above with respect to preemption, Seespring has not plausibly alleged that dbest's report to Amazon was *objectively* baseless. So the Court need not even consider whether the SAC alleges dbest's subjective intent to interfere. But here, Seespring has not alleged that dbest's infringement report to Amazon was *subjectively* baseless and brought to interfere with Seespring's business relationships, rather than to enforce its patent rights. For unfair competition, it alleges that dbest "has acted unlawfully and unfairly by submitting baseless claims to Amazon that resulted in the wrongful removal of Plaintiff's Non-Infringing Shoe Boxes from Amazon.com." Dkt. 21, ¶ 31. For tortious interference, it incorporates by reference its earlier allegations and then alleges that dbest "knowingly and intentionally interfered with" its "business relationships and expectancy of sales of its products" via Amazon "causing Amazon to remove the ASINs for the Non-Infringing Shoe Boxes." *Id.*, ¶ 35. While it disparages dbest's infringement complaint to Amazon as "baseless," it has not alleged that dbest was *subjectively*

motivated by a desire to impose collateral, *anti-competitive* injury rather than to enforce its patent rights. It has not even alleged that dbest and Seespring are competitors. So if the Court reached the second step, the tort claims would fail there as well.

Therefore, the *Noerr-Pennington* doctrine bars both tort claims, and they should be dismissed.

### D. Seespring's tort Claims are Barred by California's Litigation Privilege Because dbest's Infringement Report Meets the Requirements for the Privilege's Protection

California's litigation privilege protects from tort liability communications related to judicial proceedings, including prelitigation communications. *Theme Promotions*, 546 F.3d at 1007 (parenthetical district court properly applied California's privilege law…); *Hasberg v. California Fed. Bank*, 32 Cal. 4th 350, 361 (2004). That privilege, codified in California Civil Code § 47(b), "afford[s] litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Flatley v. Mauro*, 39 Cal. 4th 299, 321 (2006). The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212, 266 Cal. Rptr. 638 (1990). If all these requirements are met, § 47(b) operates as an absolute privilege, barring all tort claims except malicious prosecution. *Id.* at 215-16. "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913, 120 Cal. Rptr. 2d 576 (2002). And courts have applied the litigation privilege to dismiss or strike tort claims arising from a rights owner notifying third parties of infringement. *Sliding Door Co. v. KLS Doors*, No. EDCV 13-00196 JGB (DTbx), 2013 U.S. Dist. LEXIS 71304, at

*22-23 (C.D. Cal. May 1, 2013); *Fitbit Inc. v. Laguna 2, LLC*, No. 17-CV-00079 EMC, 2018 U.S. Dist. LEXIS 2402, at *27 (N.D. Cal. Jan. 5, 2018); *TP Link United States Corp. v. Careful Shopper, LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *23 (C.D. Cal. March 23, 2020); *Beyond Blond Prods., LLC v. Heldman*, No. 2:20-cv-5581, 2021 U.S. Dist. LEXIS 203255, at *20 (C.D. Cal. Feb. 8, 2021); *Shande v. Zoox, Inc.*, No. 22-cv-05821-BLF, 2024 U.S. Dist. LEXIS 91091, at *20 (N.D. Cal. May 21, 2024).

Here too, dbest's infringement report to Amazon meets all the requirements for the privilege. First, while dbest's report did not expressly threaten litigation, Seespring inferred that threat from Amazon's notifications. In its original complaint, it alleged that "an actual case or controversy currently exists between the Parties . . . and the Court would have subject matter jurisdiction if [dbest] initiated suit for patent infringement." Dkt. 1, ¶ 5. Second, as discussed above, dbest was and is authorized by law to seek protection of its patent rights. Third, dbest reported infringement to Amazon to achieve that object. And fourth, dbest's infringement report had a connection or logical relation to seeking protection of its patent rights.

Therefore, dbest's infringement report is protected by the litigation privilege. The litigation privilege bars both Seespring's tort claims, which should be dismissed.

**E.   The SAC Fails to State a Claim for Tortious Interference Because it fails to Plausibly Allege a Wrongful act or Identify a Specific Customer that Probably Would have Purchased a Delisted Product but for dbest's Report**

The elements of intentional interference with prospective economic advantage are: (1) an economic relationship between the complainant and some third party, with the probability of future economic benefit to the complainant; (2) the defendant's knowledge of that economic relationship; (3) intentional acts on the part of the defendant designed to disrupt the economic relationship; (4) actual disruption of the relationship; (5) economic harm to the complainant proximately caused by the

1   acts of the defendant; and (6) an act that is wrongful apart from the interference

2   itself. *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 380, 24 Cal.

3   Rptr.2d 436 (1995); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

4   1153-54 (2003). Alleging a "wrongful" act is necessary because "[t]he act of

5   interference with prospective economic advantage is not tortious in of itself." *Korea*

6   *Supply*, 29 Cal. 4th at 1149. "An act is not independently wrongful merely because

7   defendant acted with an improper motive." *Id.* at 1158. Rather, interference is only

8   actionable when the conduct causing the interference violates some constitutional,

9   statutory, regulatory, common law, or other determinable legal standard which forms

10  the basis for a separate legal claim against the defendant. *Della Penna*, 11 Cal. 4th at

11  408; *see also Thimes Sols. Inc. v. TP Link USA Corp.*, No. 22-56176, 2024 U.S.

12  App. LEXIS 7335, at *4 (9th Cir. March 28, 2024) (affirming summary judgment

13  for defendant on tortious interference claims where plaintiff failed to show that

14  defendant's complaints to Amazon were independently wrongful acts).

15      Not only must a plaintiff allege an independently wrongful act, but it must

16  show "that it is reasonably probable that the lost economic advantage would have

17  been realized but for the defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71

18  (1987); *see also Disney Enters. v. VidAngel, Inc.*, No. 2:16-cv-04109-AB, 2017 U.S.

19  Dist. LEXIS 221689, at * 30 (C.D. Cal. Aug. 10, 2017). Any alleged economic

20  relationship cannot be based upon "overly speculative expectancies," and a seller of

21  some good must show "an existing relationship with an identifiable buyer." *Westside*

22  *Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522, 527, 49 Cal. Rptr.

23  2d 793 (Ct. App. 1996); *see also Santa Fe Props. v. Source Bioscience*, No. CV 20-

24  10727-JFW (PVCx), 2021 U.S. Dist. LEXIS 245976, at *8 (C.D. Cal. Feb. 10, 2021)

25  (where plaintiff failed to identify any particular clients or lessees, it did not

26  adequately allege defendants' knowledge of the purported relationships or that they

27  were disrupted); *EM Gen. LLC v. Elec. Commerce, LLC*, No. 8:20-cv-00623-AB-

28  MAA, 2021 U.S. Dist. LEXIS 253173, at *17 (C.D. Cal. March 17, 2021)

1  (dismissing tortious inference claims where allegations were conclusory and

2  speculative because they failed to allege identifiable customers who presented future

3  economic advantages). The tort of interference with prospective economic advantage

4  does not protect mere "potential" relationships—which are "at most a hope for an

5  economic relationship and a desire for a future benefit." *Bio-Medical Research, Ltd.*

6  *v. Thane Int'l., Inc.*, 249 Fed. Appx. 539, 542 (9th Cir. 2007). One of the elements is

7  "an existing relationship with an identifiable buyer." *Id.*

8       Here, the SAC alleges that Seespring's tortious interference claim arose from

9  dbest's "wrongful assertion" of the '576 Patent against Seespring's products. Dkt.

10  21, ¶ 1. But it does not plausibly allege facts that could support an inference that

11  dbest's assertion was "wrongful" as California law applies that term in the tortious

12  interference context. As discussed above, asserting a duly issued patent is not

13  "wrongful" just because Seespring believes the assertion to be baseless.  And the

14  allegation that dbest "knowingly and intentionally interfered" with its business

15  relationships and expectancy of sales "for an improper purpose and by improper

16  means" is conclusory as well as unsupported. The SAC does not allege facts that

17  would support a reasonable inference that dbest reported the ASINs to Amazon in

18  bad faith, or any other independently wrongful act. For that reason alone, Count I

19  fails to state a claim for tortious interference with prospective economic advantage.

20       Seespring also fails to state a claim with respect to its existing customers

21  because it fails to allege the first element: an economic relationship between itself

22  and an *identifiable* buyer containing the probability of future economic benefit to

23  Seespring. The SAC lacks evidence of a single specific customer who would have

24  purchased Seespring's products via Amazon during the approximately one month

25  when they were delisted, but for dbest's and Amazon's actions. Because Seespring

26  has failed to allege an existing relationship with an identifiable buyer, it has not

27  stated a claim for interference with prospective economic relations. *See SOS Co. v.*

28  *E-Collar Techs.*, No. CV 16-09667-AB (AFMx), 2017 U.S. Dist. LEXIS 215124, at

*30 (C.D. Cal. Oct. 17, 2017) (granting motion to dismiss claim where plaintiffs failed entirely "to point to some contract that would have been consummated but for Defendants' alleged misconduct"); *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 639 (2021) (referring to unidentified "repeat buyers" is insufficient to plead intentional interference with prospective economic advantage when there are no facts alleged to show that those unidentified buyers were likely to purchase listings supposedly hidden by eBay).

With respect to Seespring's business relationship with Amazon itself, the SAC does not allege that dbest's infringement report was "designed to disrupt the relationship" or allege the "actual disruption of that relationship." Even if the SAC had used the word disrupt (or disruption), that allegation would be conclusory and unsupported. *See Premiertek v. Marc*, No. 2:22-cv-08590-MEMF-SK, 2023 U.S. Dist. LEXIS 195399, at *12-13 (C.D. Cal. May 24, 2023) (denying motion for preliminary injunction where claimant "provided no authority suggesting that Amazon or eBay removing a product listing for purported trademark infringement constitutes a disruption of a contractual relationship between Amazon or eBay and the product's seller). And the SAC acknowledges that after Seespring presented non-infringement arguments to dbest, dbest took steps to withdraw its infringement complaint and gave Seespring a covenant not to sue. *Id.*, ¶¶ 12-13). Seespring has failed to allege an intentional act by dbest designed to disrupt Seespring's contractual relationship with Amazon, or that its relationship was actually disrupted, or an independently wrongful act.

Therefore, Seespring has not stated a claim with respect to Amazon, and the tortious interference claim should also be dismissed. *See First Am. Cinema v. Chicken Soup for the Soul Entm't*, No. 19-9577 PSG (GJSx), 2020 U.S. Dist. LEXIS 260192 at *18-19 (C.D. Cal. March 12, 2020) (granting motion to dismiss where plaintiff did not sufficiently allege economic relations that were disrupted or intentional acts designed to disrupt them that were independently wrongful).

**F.  The SAC Fails to State a Claim for Unfair Competition Under Bus. & Prof. Code § 17200 Because it has not Plausibly Alleged Conduct that is Unlawful, Unfair, or Fraudulent**

For its unfair competition claim, Seespring pleads a conclusory allegation that dbest's alleged acts constitute "unlawful, unfair, and/or fraudulent business practices" under § 17200, et. seq. Dkt. 21, ¶ 29. California courts have explained how to apply each of the three "prongs" of the UCL. The UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (Cal. 1999). Where a statutory claim fails, a UCL claim also fails. *Id.*, 20 Cal. 4th at 182; *Fernandez v. Progressive Mgmt. Sys.*, 2022 U.S. Dist. LEXIS 120329, 2022 WL 2541272, at *5 (S.D. Cal. July 7, 2022) ("Where a plaintiff cannot state a claim under a "borrowed" law, he or she cannot state a UCL claim."); *Ingels v. Westwood One Broad Servs., Inc.*, 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933 (2005) ("A defendant cannot be liable under [the UCL] for committing unlawful business practices without having violated another law.").

Here, Seespring does not identify the borrowed violation in Count I, and the only other cause of action asserted in the SAC is tortious interference with prospective economic advantage. Dkt. 21, ¶¶ 1, 30. As discussed above, state law torts based on a defendant's communications asserting its patent rights are preempted by federal patent law unless they plausibly allege bad faith.  They are also barred by the *Noerr-Pennington* doctrine and California's litigation privilege. A plaintiff may not "plead around" an absolute bar to relief by styling its cause of action as unfair competition. *Manufacturers Life Ins. Co. v. Superior Court* 10 Cal. 4th 257, 283 (1995). Therefore, Seespring cannot state a claim for unfair competition under Section 17200's "unlawful" prong.

California's Supreme Court has explained section 17200's "unfair" prong. "When a plaintiff who claims to have suffered injury from a direct competitor's

"unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Here, Seespring alleges that it suffered injury[1], but it has only alleged harm to itself (not to competition): delisting of some of its products; disrupted business operations, damaged relations with customers, financial losses, and harm to its goodwill and competitive standing in the marketplace. Dkt. 21, ¶ 13. But harm to a competitor is not harm to competition. *Watson Labs. Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp.2d 1099, 1119 (C.D. Cal. 2011). And Seespring has not alleged that dbest is a competitor or that dbest's infringement report to Amazon was conduct that threatens an incipient violation of an antitrust law, or violates its policy or spirit. Nor does Seespring claim to be a *consumer* injured by dbest's infringement report or that consumers are likely to be deceived by a private communication to Amazon. Therefore, it has not stated a claim under the "unfair" prong of Section 17200. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010) (affirming grant of demurrer to § 17200 claim as to practices alleged to be "unfair").

To plead a claim under sections 17200's "fraudulent" prong, the elements of fraud must be pleaded with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Group,*

---

[1] Seespring alleges that it has been "materially harmed in an amount to be proven at trial." Dkt. 21, ¶ 33. Its claimed injury is relevant to standing, but compensatory damages are not available in claims asserting statutory UCL claims. *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1009 (2005); *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1184 (2012).

*Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843, 938 P.2d 903 (Cal. 1997). "[C]ourts have recognized that UCL fraud plaintiffs must allege their own reliance—not the reliance of third parties—to have standing under the UCL." *Shenzhen Yangjinmaoyi Co., LTD v. Hangzhou Chic Intelligent Tech. Co., LTD*, No. EDCV 22-1144 JGG (SHKx), 2023 U.S. Dist. LEXIS 133061, *21-22 (C.D. Cal. Feb. 21, 2023).

 Here, Seespring has alleged that dbest filed a baseless infringement report with Amazon, and that it was injured when Amazon removed its listings in response to that report. Seespring has not alleged that it relied on the infringement report, which it learned of when Amazon notified it that its listings had been removed for alleged infringement. Not only has it not alleged reliance of dbest's alleged misrepresentation, but it has alleged the opposite: that when it received Amazon's notifications, it both contacted dbest to demand that it withdraw its complaint and appealed to Amazon based on its non-infringement analysis. Therefore, on the SAC's allegations, Seespring lacks standing[2] to bring a UCL claim based on 17200's "fraudulent prong." Further, it has not pleaded all the elements of fraud with particularity or pleaded that dbest intended to deceive Seespring or Amazon or that any party relied on the alleged "misrepresentation."

 For all these reasons, Seespring has not stated a claim under section 17200's "fraudulent" prong. Because Seespring has not plausibly alleged facts that would state a claim under any of section 17200's three prongs, its unfair competition claim must be dismissed.

---

 [2] Even if Seespring had standing for claim based on fraud, it cannot allege that Amazon relied on the truth of dbest's report to remove Seespring's listings. Amazon removes listings when it receives a report of infringement without evaluating its merits and will reinstate those listings upon concluding that the accused products are authorized or do not infringe, as Seespring alleges Amazon did as a result of its appeal. Dkt. 21, ¶ 10.

# V.    CONCLUSION

For the reasons discussed above, the SAC fails to state either a claim for tortious interference or a claim for unfair competition under section 17200. dbest respectfully requests the Court to dismiss the SAC in its entirety.

Dated: June 6, 2025                    Respectfully submitted,

**ORBIT IP, LLP**

By:  /s/ Ehab M. Samuel

Ehab M. Samuel (CA SBN 228296)

David A. Randall (CA SBN 156722)